UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 25-cv-02137-JRT-DTS

RYLEE SILVA-VIDINHA,

               Plaintiff,

     v.

UNITED STATES OF AMERICA et al.,

            Defendants.

**BRIEF IN SUPPORT OF
UNITED STATES OF AMERICA AND
FEDERAL BUREAU OF PRISONS'
MOTION TO DISMISS**

This case arises out of the death of Starsha Silva in May 2023, while she was incarcerated at the Federal Correctional Institution in Waseca ("FCI-Waseca"). Plaintiff Rylee Silva-Vidinha is Ms. Silva's daughter, and she is suing the United States of America, the Federal Bureau of Prisons ("BOP"), and various individual defendants for wrongful death, constitutional violations, and Minnesota state law causes of action.

Sovereign immunity bars every claim that Silva-Vidinha asserts against the federal government. Starting with the BOP, there is no waiver of sovereign immunity that permits Counts I through V to proceed directly against a federal agency. Nor is there a waiver that permits Counts II through V to proceed against the United States. And the evidence accompanying this motion shows that Silva-Vidinha failed to comply with the terms and conditions of the waiver that might have otherwise permitted Count I to proceed. Pursuant to Federal Rule of Civil Procedure 12(b)(1), the United States and the BOP therefore move to dismiss all claims alleged against them for lack of subject matter jurisdiction. The United States alternatively moves to dismiss Count I pursuant to Rule 12(b)(6) because Silva-Vidinha lacks authority to pursue her wrongful death claim.

## STANDARD OF REVIEW

The two standards for reviewing this motion are well-established.

First, the United States and the BOP move to dismiss every count in the complaint under Federal Rule of Civil Procedure 12(b)(1). The BOP raises a facial challenge to the Court's subject matter jurisdiction over Counts I through V, and the United States raises a factual challenge to Count I and a facial challenge to Counts II through V. When considering a facial challenge to subject matter jurisdiction, the Court restricts itself to the pleadings and analyzes "if [Silva-Vidinha] has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). Here, that means Silva-Vidinha must identify a waiver of sovereign immunity that permits her claims and allege facts showing that she complied with the terms and conditions of that waiver.

For the United States' factual challenge to Count I, Silva-Vidinha does "not enjoy the benefit of the allegations in [her] pleadings being accepted as true," and the Court can consider materials outside the pleadings to determine whether jurisdiction exists. *Id. at* 915; *Rollo-Carlson v. United States*, 2019 U.S. Dist. LEXIS 43796, at *6 (D. Minn. Mar. 18, 2019), *aff'd*, 971 F.3d 768 (8th Cir. 2020). As the plaintiff in this case, Silva-Vidinha bears the burden of proving that subject matter jurisdiction exists for Count I. *See Two Eagle v. United States*, 57 F.4th 616, 620 (8th Cir. 2023); *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

Second, and in the alternative, the United States moves to dismiss Count I under Rule 12(b)(6). To review this aspect of the motion, the Court accepts Silva-Vidinha's well-

pled factual allegations as true and then considers whether those allegations state a claim to relief that is plausible on its face. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). But the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 717 (citations and internal quotation marks omitted).

With these standards in mind, the United States and the BOP draw the following factual background and procedural history from Silva-Vidinha's complaint, the declaration and supporting materials filed with this motion, and publicly available information from court dockets in Minnesota and Hawaii.

## FACTUAL BACKGROUND

### I.    Ms. Silva's Incarceration and Medical Treatment

Starsha Silva was a federal inmate at the time of her death in 2023. Compl. ¶ 1. She was serving a 14-year prison sentence after pleading guilty in 2021 to one count of being a felon in possession of a firearm and one count of possessing methamphetamine with intent to distribute. *See generally United States v. Silva*, No. 19-cr-89 (D. Haw. filed July 2, 2019). Ms. Silva was incarcerated at FCI-Waseca from January 27, 2022, until she passed away on May 24, 2023. Compl. ¶ 1; Declaration of Jarad Herbig ("Herbig Decl.") ¶ 16; Ex. G.

The complaint alleges that Ms. Silva had a "documented history of congenital heart disease" and received medical treatment for this issue (and others) while incarcerated at FCI-Waseca. Compl. ¶¶ 36-37. As relevant here, Ms. Silva complained to BOP medical

personnel of fatigue, shortness of breath, and chest pain in early 2023. Compl. ¶ 36. The BOP therefore arranged a cardiac consult for Ms. Silva at the Mayo Clinic toward the beginning of May 2023. Compl. ¶ 37. The consult led to a recommendation for surgery to redo a prior valve replacement. Compl. ¶ 37.[1] Ms. Silva returned to FCI-Waseca after the appointment, and the BOP coordinated with Mayo Clinic to schedule the surgery and complete the pre-operation checklist provided by Mayo Clinic. Compl. ¶¶ 39-45.

On May 24, 2023, Ms. Silva was packing her belongings so that she could be transferred to a Federal Medical Center. Compl. ¶ 49. As she was packing, Ms. Silva collapsed. ¶ 52. Correctional officers and other medical personnel arrived on the scene and tried to revive Ms. Silva, but they were unable to do so. Compl. ¶ 54.

## II.    The Administrative Claim

Under the Federal Tort Claims Act ("FTCA"), a person seeking damages against the United States for negligence or wrongful death must first present an administrative claim to the appropriate federal agency. 28 U.S.C. § 2675(a). To satisfy this presentment requirement, the claimant or her legal representative needs to provide the agency with "an executed Standard Form 95 . . . accompanied by a claim for money damages in a sum certain . . . and the title or legal capacity of the person signing, and . . . evidence of his authority to present a claim on behalf of the claimant." 28 C.F.R § 14.2(a).

---

[1]    The complaint alleges that providers at the Mayo Clinic recommended *immediate* surgery and advised against Ms. Silva returning to FCI-Waseca. Compl. ¶ 37. That is not true, as the Mayo Clinic's medical records for the encounter will show. But the Court is stuck with Silva-Vidinha's version of events at this point.

In August 2024, the Loevy & Loevy law firm sent a letter to the BOP with a Standard Form 95 ("SF-95"). Herbig Decl. ¶ 5, Ex. A, at 1-2. The SF-95 listed "Loevy & Loevy" as the claimant for a claim regarding "The Wrongful Death of inmate Starsha Silva at FCI Waseca Federal Correctional Facility on May 24, 2023." Herbig Decl. Ex. A, at 3-4. The form was not signed, but it listed the law firm's phone number in the box for "Phone Number of Person Signing Form." Herbig Decl. Ex. A, at 3; *see also id.* at 1 (listing same phone number in letter footer); https://www.loevy.com/ (listing same phone number in website header). With the letter and unsigned SF-95, the Loevy & Loevy firm enclosed an autopsy report, scans of two bills, and a picture of Ms. Silva's death certificate. Herbig Decl. ¶ 5, Ex. A, at 5-16.

The BOP responded by sending a letter to the Loevy & Loevy firm explaining that the SF-95 was not signed or completely filled out. Herbig Decl. ¶ 6, Ex. B. That prompted the firm to resend the SF-95 on September 10, 2024—signed this time, and now seeking an additional $20 million. Herbig Decl. ¶ 7, Ex. C, at 2-3.[2] The SF-95 was accompanied by copies of the previously submitted documents (an autopsy report, scanned bills, and an image of a death certificate) and the BOP's prior correspondence. Herbig Decl. ¶ 7, Ex. C, at 4-19. As before, the SF-95 identified "Loevy & Loevy" as the claimant and listed the firm's phone number next to the signature box. Herbig Decl. Ex. C, at 2. The signature

---

[2]    The complaint alleges that the SF-95 was resubmitted in October 2024. Compl. ¶¶ 62-63. Silva-Vidinha has her dates wrong—the SF-95 was resent in September. Herbig Decl. ¶ 7, Ex. C, at 1. Although the Loevy & Loevy firm claims to have sent the BOP another mailing in October 2024, that mailing did not include any SF-95. Herbig Decl. ¶ 8. Instead, the mailing re-sent the same supporting documents included with the August and September submissions. Herbig Decl. ¶ 8.

itself was illegible but had the name "Rylee Silva-Vidinha" electronically stamped underneath. Herbig Decl. Ex. C, at 2. The mailing included an Adobe Acrobat "Final Audit Report" showing that the signer's email address was "rmsvidinha@gmail.com." Herbig Decl. Ex. C, at 16. Yet nowhere in the body of the SF-95, the documents accompanying the form, or the cover letter from Loevy & Loevy was there any explanation as to who "Rylee Silva-Vidinha" was. Herbig Decl. ¶ 7, Ex. C. Nor did the submission include evidence of Silva-Vidinha's authority to present an administrative claim on behalf of Ms. Silva. Herbig Decl. Ex. C.

It was a mistake to omit evidence of Silva-Vidinha's authority to sign the SF-95 and present it on Ms. Silva's behalf. The instructions on the form emphasized this point:

> The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

Herbig Decl. Ex. C, at 3. The SF-95 also called specific attention to the regulations that contain the proof-of-authority requirement for administrative claims, noting that "[c]omplete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14." Herbig Decl. Ex. C, at 3. Those regulations make clear that a claim is not properly presented unless it states "the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative." 28 C.F.R. § 14.2(a). Despite this requirement, Silva-

Vidinha never provided the BOP with any proof of her authority to act or present an administrative claim on Ms. Silva's behalf. Herbig Decl. ¶¶ 5, 7, 8, 14, 15, Exs. A and C.

Silva-Vidinha and the Loevy & Loevy firm did not submit any additional documents or information to the BOP after the signed and revised SF-95 provided in September 2024. Herbig Decl. ¶ 9. The BOP acknowledged receipt of the administrative claim submitted in September 2024 and began investigating. Herbig Decl. ¶ 10, Ex. D. As the agency's own systems and correspondence confirm, the BOP understood that the claimant for this claim was the Loevy & Loevy firm—a reasonable conclusion given how the SF-95s had been filled out. Herbig Decl. ¶ 11, Ex. E. The BOP was not able to conclude its investigation before Silva-Vidinha filed this lawsuit on May 19, 2025. Compl. ¶ 64. But the agency sent a letter to the Loevy & Loevy firm denying the administrative claim after litigation got underway. Herbig Decl. ¶¶ 12-13, Ex. F.

The United States and the BOP now timely move to dismiss.[3]

## ARGUMENT

Sovereign immunity bars every claim that Silva-Vidinha asserts against the United States and the BOP. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citations, alterations, and internal quotation marks omitted). That means Silva-Vidinha must identify a waiver of

---

[3]   The Department of Justice does not currently represent any of the individual defendants named in the complaint. This motion is brought only by the United States and the BOP.

sovereign immunity for each claim she alleges and show that she complied with the terms and conditions of the applicable waiver.

From the face of the complaint, the Court lacks subject matter jurisdiction over Counts II through V. Silva-Vidinha does not identify any waiver of sovereign immunity that authorizes constitutional claims, "supervisory and policy" claims, or state law claims against the federal government. The same is true for Count I as alleged against the BOP. Silva-Vidinha does not identify a waiver of sovereign immunity that permits an FTCA claim against an agency; the only proper defendant is the United States. For Count I as alleged against the United States, the evidence submitted with this motion shows that Silva-Vidinha did not comply with the conditions of the FTCA's wavier of sovereign immunity. The end result is that sovereign immunity bars Counts I through V as alleged against the United States and the BOP. The Court should dismiss these claims for lack of subject matter jurisdiction and dismiss the United States and the BOP as parties to this case.

## I.    Count I

Count I is an FTCA claim. *See* 28 U.S.C. § 1346(b)(1). Silva-Vidinha alleges that "[t]he BOP and its medical staff, acting within the scope of federal employment, failed to provide the requisite standard of care to Ms. Silva." Compl. ¶ 67. Although Silva-Vidinha does not specify whether she asserts this claim against the United States, the BOP, or both, it does not matter because sovereign immunity bars Count I in its entirety.

### A.    The BOP's Facial Challenge

The BOP is raising a facial challenge to the Court's subject matter jurisdiction over Count I. An FTCA action is the exclusive remedy for negligent acts or omissions of a

federal employee. 28 U.S.C. § 2679(b). But FTCA claims must be brought against the United States rather than individual federal employees or their employing agencies. *Id.* § 1346(b)(1) (granting jurisdiction over "claims against *the United States*" (emphasis added)), § 2679(b)(1) (referring to exclusiveness of "remedy against *the United States*" (emphasis added)). The Eighth Circuit has long held that "a federal agency cannot be sued under the Federal Tort Claims Act [because] the United States is the proper defendant," *Duncan v. Dep't of Labor*, 313 F.3d 445, 447 (8th Cir. 2002) (per curiam), and this Court has noted the rule as well, *see, e.g.*, *Blackwell v. SSA*, 2024 U.S. Dist. LEXIS 21157, at *8 (D. Minn. Feb. 7, 2024) ("FTCA claims may only be brought against the United States, not its agencies . . . or employees."). Silva-Vidinha is wrong that an FTCA claim can be asserted directly against an agency, and she has failed to plead any other basis for subject matter jurisdiction over Count I as alleged against the BOP.

## B.    The United States' Factual Challenge

The United States is raising a factual challenge to the Court's subject matter jurisdiction over Count I. Although Silva-Vidinha identifies a waiver of sovereign immunity that would have allowed Count I—i.e., the FTCA—the evidence submitted with this motion shows that she failed to comply with the conditions of that waiver. Specifically, Silva-Vidinha did not properly present an administrative claim to the BOP before filing suit. Thus, sovereign immunity bars Count I as alleged against the United States.

There were two related problems with the administrative claim sent to the BOP in this case. First, both SF-95s failed to identify Silva-Vidinha as the true claimant, and both failed to disclose the legal status or capacity in which she was presenting an administrative

claim. Second, the SF-95s and accompanying materials did not include proof of Silva-Vidinha's authority (or the Loevy & Loevy firm's authority, for that matter) to pursue a wrongful death action on behalf of Ms. Silva. Either defect would deprive this Court of subject matter jurisdiction over Count I, which means Silva-Vidinha needs to overcome both defects to avoid dismissal. She cannot do so, as explained below.

### 1.    The Requirement to Disclose Capacity and Prove Authority

Proper presentment of an administrative claim is a jurisdictional prerequisite for bringing an FTCA action. The FTCA explicitly bars suit unless an administrative claim is first "presented" to the appropriate agency. 28 U.S.C. § 2675(a); *see also McNeil v. United States*, 508 U.S. 106, 112 (1993). Under the Attorney General's regulations and binding Eighth Circuit law, a claim is deemed "presented" only after the claimant or her authorized legal representative provides the appropriate agency with:

1. an executed Standard Form 95 or other written notification of an incident;

2. a claim for money damages with a sum certain; and

3. the title or legal capacity of the person signing, accompanied by evidence of his authority to present a claim on behalf of the claimant.

28 C.F.R. § 14.2(a); *see also Mader v. United States*, 654 F.3d 794, 803-04 (8th Cir. 2011) (en banc). In other words, a claimant's disclosure of her capacity and proof of her authority are requirements for properly presenting an administrative claim and complying with the FTCA's waiver of sovereign immunity. If a claimant fails to do both of these things when submitting an administrative claim, then sovereign immunity bars her subsequent FTCA action. *Mader*, 654 F.3d at 803-05; *Rollo-Carlson*, 2019 U.S. Dist. LEXIS 43796, at *3-4.

More than a decade ago, the en banc Eighth Circuit explained why disclosing a claimant's legal status and proving her authority to pursue an administrative claim are jurisdictional requirements for proper presentment. In *Mader*, the court of appeals analyzed the history and purpose of exhaustion under the FTCA, emphasizing that presentment "serves a practical purpose—it provides federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." 654 F.3d at 800-01. To serve this purpose, "§ 2675(a) requires the presentment of evidence of a personal representative's authority to act on behalf of a claim's beneficiaries, something totally essential to meaningful agency consideration." *Id.* at 801. Complying with *Mader* is not difficult—the Eighth Circuit itself noted that providing proof of authority is "far from burdensome. Assuming a representative is, in fact, duly authorized to present an FTCA claim on behalf of beneficiaries under applicable state law, evidence of such authority is uniquely in the representative's possession." *Id.* at 804.

*Mader* is on-point and requires dismissing Count I. Like Silva-Vidinha's FTCA action, *Mader* involved a wrongful death claim. *Id.* at 798-99. And like the substantive law governing this case, the state tort law at issue in *Mader* permitted wrongful death claims to be brought only by appointed representatives. *Id.* at 801 (citing Neb. Rev. Stat. § 30-810). This led the Eighth Circuit to conclude that "federal agencies are unable to meaningfully settle, consider, or even fully ascertain a wrongful death claim under § 2672 without first receiving evidence of the personal representative's authority to act on behalf of the claim's beneficiaries." *Id.* at 803. And because proper presentment of an administrative claim is a condition of the United States' waiver of sovereign immunity, compliance with the proof-

of-authority requirement must be a jurisdictional prerequisite to an FTCA action. *Id.* at 805-08. This straightforward rule dooms Count I as alleged against the United States.

### 2. Silva-Vidinha's Failure to Disclose Capacity and Prove Authority

Silva-Vidinha's FTCA claim is based on medical malpractice and wrongful death. In Minnesota, only a court-appointed trustee can bring these types of claims on behalf of a decedent. *See* Minn. Stat. § 573.02, subd. 1; *Christiansen v. Univ. of Minn. Bd. of Regents*, 733 N.W.2d 156, 159 (Minn. Ct. App. 2007). Silva-Vidinha needed to comply with this aspect of Minnesota law because her mother died at FCI-Waseca, Compl. ¶ 1, and "[t]he 'extent of the United States' liability under the FTCA is generally determined by reference to state law,'" *Rollo-Carlson*, 971 F.3d at 770 (quoting *Molzof v. United States*, 502 U.S. 301, 305 (1992)). To properly present an administrative claim, Silva-Vidinha had to disclose the capacity in which she was submitting the claim and give the BOP proof of her authority to do so—i.e., proof of her appointment as a wrongful death trustee under Minnesota law. *See Mader*, 654 F.3d at 803 ("[A] properly 'presented' claim under § 2675(a) must include evidence of a representative's authority to act on behalf of the claim's beneficiaries under state law."). She did not do either of those things.

Starting with the missing disclosure of capacity, nothing in or submitted with the two SF-95s mentioned Silva-Vidinha's appointment as wrongful death trustee. *See* Herbig Decl. Exs. A and C.[4] In fact, neither submission bothered to explain that she was

---

[4]    As noted above, the mailing that the Loevy & Loevy firm purportedly sent in October 2024 did not include any new or additional documents; everything in that mailing had already been sent to the BOP. Herbig Decl. ¶ 8.

Ms. Silva's daughter *or even that she was the true claimant*—both SF-95s listed "Loevy & Loevy" as the claimant and provided the firm's address and phone number as the only contact information. *See* Herbig Decl. Exs. A and C. For that reason alone, the Court should conclude that Silva-Vidinha failed to properly present an administrative claim before bringing an FTCA action. The governing regulations require claims to state "the title or legal capacity of the person signing." 28 C.F.R. §14.2(a). And the instructions on the SF-95 were just as clear: "A claim presented by an agent or legal representative must be presented *in the name of a claimant* [and] it must show the *title or legal capacity of the person signing.*" Herbig Decl. Ex. C, at 3 (emphasis added). These are simple directions for submitting administrative claims, and Silva-Vidinha did not follow them.

In addition to not disclosing Silva-Vidinha's legal capacity, the administrative claim lacked any evidence of her status. Herbig Decl. ¶¶ 14-15, Exs. A and C. There is an easy explanation for the omission: Silva-Vidinha could not give the BOP evidence of her appointment as a wrongful death trustee because no such appointment had occurred. Indeed, a search of Minnesota's state court dockets for cases involving "Starsha Silva" or "Rylee Silva-Vidinha" confirms she still has not sought appointment to this day, let alone completed the process.[5] *See Case Search – Minnesota Court Records Online*, MINNESOTA JUDICIAL BRANCH https://publicaccess.courts.state.mn.us/CaseSearch (last searched July

---

[5]  For this reason, the United States alternatively moves to dismiss Count I under Rule 12(b)(6). A plaintiff cannot bring a wrongful death action under Minnesota law without first being appointed as a wrongful death trustee. *See Miklas v. Parrott*, 684 N.W.2d 458, 463 (Minn. 2004). Because Silva-Vidinha has not been appointed as a wrongful death trustee, her claim under the FTCA automatically fails.

28, 2025). True, the complaint alleges that Silva-Vidinha "is the duly appointed Special Administrator of the Estate of Starsha Silva." Compl. ¶ 9. But an appointment to act as the administrator of an estate in Hawaii probate court is not the same as an appointment to act as a wrongful death trustee under Minnesota tort law. Furthermore, Silva-Vidinha's status as a Special Administrator[6] of her mother's estate is irrelevant because she did not give the BOP evidence of that status either. Herbig Decl. ¶ 15, Exs. A and C.

As the plaintiff, it is Silva-Vidinha's burden to prove that she complied with the conditions of a waiver of sovereign immunity that would allow Count I to proceed. The record evidence prevents her from carrying that burden. There is no dispute that Silva-Vidinha failed to identify herself as the true claimant for the administrative claim that led to this lawsuit. There is no dispute that Silva-Vidinha failed to state the capacity in which she was presenting that administrative claim. And there is no dispute that Silva-Vidinha failed to provide evidence of her authority to pursue a wrongful death claim under Minnesota law or otherwise act on Ms. Silva's behalf.

### 3.    Dismissal of Count I

Silva-Vidinha's missteps at the presentment phase mean that sovereign immunity now bars Count I as alleged against the United States. Although this may seem like a harsh result, the Supreme Court has squarely held that FTCA exhaustion "is certainly not a trap for the unwary" and "in the long run, experience teaches that strict adherence to the

---

[6]    Silva-Vidinha has her terminology wrong. The public docket shows that a Hawaii state court appointed her to act as the "Personal Representative" of Ms. Silva's estate. *See In re Estate of Starsha Silva*, No. 5CLP-23-0123 (Haw. Cir. Ct. filed Nov. 2, 2023).

procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *McNeil*, 508 U.S. at 113 (citations and internal quotation marks omitted). Because Silva-Vidinha overlooked the basic requirements for properly presenting an administrative claim, she cannot pursue an FTCA action against the United States.

This Court consistently applies the rule set out in *Mader* and its progeny to dismiss FTCA actions that suffer from the same deficiencies at issue here. Take for example *Rollo-Carlson*, where the court dismissed a wrongful death action brought by the decedent's mother. 2019 U.S. Dist. LEXIS 43796, at *1. Just like Silva-Vidinha, the plaintiff in *Rollo-Carlson* submitted an SF-95 that did not disclose or prove her status as a wrongful death trustee. *Id.* at *9. When the agency did not adjudicate the claim within six months, the plaintiff filed suit. *Id.* at *10. But at that point she had not been appointed as a wrongful death trustee, so she dismissed the case, got appointed by a Minnesota state court, and re-filed her FTCA action in federal court. *Id.* at *11. The United States moved to dismiss, and this Court granted the motion after explaining that although the plaintiff

> obtained authority to act on behalf of the asserted claim's beneficiaries by obtaining appointment as trustee under Minnesota's wrongful-death statute, the allegations of the complaint and the evidence submitted by the parties show that she did not timely present evidence of that authority to the VA before commencing this action. As a result, under 28 U.S.C. § 2675(a) and the Eighth Circuit's interpretation of that statute in *Mader*, subject-matter jurisdiction does not exist over this case.

*Id.* The Eighth Circuit affirmed this Court's dismissal. *Rollo-Carlson*, 971 F.3d at 771.

There is also the decision a few months ago in *Johns v. United States*, which dismissed an FTCA wrongful death action due to missing proof of authority. 2025 U.S. Dist. LEXIS 39109 (D. Minn. Mar. 5, 2025). The plaintiff in *Johns* had been appointed as

a wrongful death trustee when she presented an administrative claim, but she failed to disclose that status or include evidence of the appointment with her SF-95. *Id.* at *11. Those failures led this Court to conclude that under "*Mader*, the proof-of-authority requirement applies strictly, barring relief. Johns's administrative claim did not include evidence of her authority to act on Fairbanks's behalf, and as a result, the Court lacks jurisdiction to hear Johns's claims." *Id.* at *12-13; *see also Spanier v. United States Fish & Wildlife Serv.*, 2022 U.S. Dist. LEXIS 111092, at *5 (D. Minn. June 23, 2022) (dismissing FTCA action because the administrative claim failed to identify a trust as the true claimant and lacked proof of the plaintiffs' authority to act on behalf of the trust).

None of this Court's decisions were outliers. Since *Mader*, district courts throughout the Eighth Circuit routinely dismiss FTCA cases where proof of authority is missing from the underlying administrative claim. To pick some examples:

- *Pretends Eagle v. United States*, 692 F. Supp. 3d 864 (D.S.D. 2023) (representative of estate failed to present proof of authority to act on behalf of decedent);

- *Pipes v. Kirksville Mo. Hosp. Co.*, 2022 U.S. Dist. LEXIS 229569 (E.D. Mo. Dec. 21, 2022) (parents failed to present proof of their appointment to act on behalf of their minor child);

- *Parrott v. United States*, 2019 U.S. Dist. LEXIS 120836 (W.D. Mo. July 18, 2019) (LLC's organizer and registered agent failed to present proof of his authority to act on behalf of LLC);

- *Hennager v. United States*, 2020 U.S. Dist. LEXIS 223334 (D.N.D. Nov. 30, 2020) (grandfather did not present proof of guardianship of his minor grandson);

- *Runs After v. United States*, 2012 U.S. Dist. LEXIS 100265 (D.S.D. July 19, 2012) (grandmother did not present proof of authority to file administrative claim on behalf of her minor grandson), *aff'd*, 511 F. App'x 596 (8th Cir. 2013) (per curiam).

These decisions acknowledge that strict compliance is necessary to properly present an administrative claim. Expecting a claimant to provide evidence of her authority "is not a pointless administrative hurdle—it is fundamental to the meaningful administrative consideration and settlement process contemplated in §§ 2675(a) and 2672." *Mader*, 654 F.3d at 803-04. These decisions also recognize that there are no exceptions to the jurisdictional proof-of-authority requirement for extenuating circumstances, actual notice of a claimant's authority, or a claimant providing proof of authority after the deadline for an administrative claim has passed. Any such excuses from Silva-Vidinha in this case would fail as a matter of law.

Ultimately, Silva-Vidinha did not identify herself as a claimant or disclose the capacity in which she was presenting an administrative claim to the BOP. Nor did Silva-Vidinha provide proof of her authority to pursue a wrongful death claim under Minnesota law (or even proof that she was appointed as a personal representative under Hawaii law). As a result, Silva-Vidinha failed to satisfy the presentment requirement that is a condition of the FTCA's waiver of sovereign immunity. This Court lacks subject matter jurisdiction over Count I as alleged against the United States.

## II.   Counts II through V

The United States and the BOP are raising facial challenges to the Court's subject matter jurisdiction over Counts II through V. These portions of the complaint set out a slew of claims without delineating which ones are alleged against which defendants. To the extent Silva-Vidinha means to assert any of them against the United States or the BOP, the claims are obviously barred by sovereign immunity. During the parties' meet-and-confer,

17

Silva-Vidinha declined to clarify which claims (if any) are asserted against the United States or the BOP, and she declined to voluntarily dismiss any claims against the federal government. The United States and the BOP therefore move the Court for an order formally dismissing Counts II through V.

Count II is a *Bivens* claim. Silva-Vidinha alleges that BOP personnel were deliberately indifferent to her serious medical needs, in violation of her Eighth Amendment rights. Compl. ¶¶ 70-73. Of course, "[i]t is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States or the BOP."). And Silva-Vidinha does not identify any other waiver of sovereign immunity that would permit an Eighth Amendment claim to proceed directly against the federal government. Thus, the Court lacks subject matter jurisdiction over Count II as alleged against the United States and the BOP.

Count III is odd. There is no such thing as a free-standing "supervisory and policy" claim, and plaintiffs cannot impose vicarious liability on the United States or one of its agencies "based on the doctrine of respondeat superior in a *Bivens*-type action." *Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir. 1987) (per curiam); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[V]icarious liability is inapplicable to *Bivens* and § 1983 suits.").

18

Tellingly, the complaint does not cite any waiver of sovereign immunity that covers the claim. *See* Compl. ¶¶ 74-77. The Court should dismiss Count III because Silva-Vidinha failed to identify a waiver of sovereign immunity that permits her "supervisory and policy" claim to proceed. *See Two Eagle*, 57 F.4th at 620; *Osborn*, 918 F.2d at 730.

Looking at the substance of Count III does not solve the problem. Silva-Vidinha alleges that "[t]he BOP permitted and maintained customs and practices" that contributed to the violation of Ms. Silva's rights. Compl. ¶ 75. Those are typical buzzwords for a *Monell* claim, under which a municipality can be liable for a "policy or custom that caused the plaintiff's injury." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citations and internal quotation marks omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Yet *Monell* claims are not cognizable against the federal government; the Supreme Court expressly limited its holding to "local governments." 436 U.S. at 690 n.54. District courts within the Eighth Circuit routinely dismiss *Monell* claims alleged against the federal government for this very reason. *See, e.g.*, *Watson v. United States*, 2021 U.S. Dist. LEXIS 69358, at *21 (E.D. Mo. Apr. 9, 2021); *Olson v. United States Postal Serv.*, 2015 U.S. Dist. LEXIS 95992, at *16 (D. Minn. June 15, 2015).

If Silva-Vidinha is instead trying to allege some sort of negligent supervision claim, then it must be brought pursuant to the FTCA. *See* 28 U.S.C. § 2679(b). But any FTCA claim is barred by sovereign immunity, for the reasons explained above. Equally important, Silva-Vidinha did not clearly present a "supervisory and policy" claim to the BOP in an SF-95 before filing suit. *See* Herbig Decl. Exs. A and C. And "[a] litigant may not base any part of [her] tort action against the United States on claims that were not first presented to

the proper administrative agency." *McCoy v. United States*, 264 F.3d 792, 795 (8th Cir. 2001). No matter how Silva-Vidinha construes her "supervisory and policy" claim, the Court lacks subject matter jurisdiction over Count III as alleged against the United States and the BOP.

Counts IV and V are state law tort claims for medical malpractice and wrongful death. Compl. ¶¶ 78-82. Although Congress has waived sovereign immunity for injuries and deaths caused by the negligent acts or omissions of federal employees, the *exclusive* vehicle for pursuing such claims is the FTCA. 28 U.S.C. § 2679(b)(1). Silva-Vidinha has already pled an FTCA claim in Count I, making Counts IV and V duplicative as to the United States and the BOP. Just because Silva-Vidinha's remedy under the FTCA is barred due to her failure to properly present an administrative claim does not mean she can pursue a state law tort action against the federal government. *See United States v. Smith*, 499 U.S. 160, 165-69 (1991); *Brown v. Armstrong*, 949 F.2d 1007, 1012-13 (8th Cir. 1991). The Court lacks subject matter jurisdiction over Counts IV and V as alleged against the United States and the BOP.

## CONCLUSION

The complaint does not allege any cause of action against the United States or the BOP over which this Court has subject matter jurisdiction. From the face of the complaint, the Court can conclude that sovereign immunity bars almost all of Silva-Vidinha's claims. And for the one cause of action that she could have conceivably brought under the FTCA, the record evidence confirms that Silva-Vidinha failed to comply with the conditions of the United States' waiver of sovereign immunity. Accordingly, the Court should dismiss

Counts I through V as alleged against the United States and the BOP. If the Court concludes that Silva-Vidinha properly presented an administrative claim, then Count I should nevertheless be dismissed for failure to state a claim because Silva-Vidinha has not been appointed as a wrongful death trustee under Minnesota law. Either way, the Court should grant this motion and dismiss the United States and the BOP as parties to this case.

Dated: July 28, 2025

JOSEPH H. THOMPSON
Acting United States Attorney

 s/ Trevor Brown

BY:  TREVOR C. BROWN
Assistant United States Attorney
Attorney ID Number 396820
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415
(612) 664-5600
trevor.brown@usdoj.gov