IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MINNESOTA

| | |
|---|---|
| RYLEE SILVA, as Personal Representative of the ESTATE OF STARSHA SILVA, and on her own behalf, | ) ) ) ) ) ) Case No. 25-cv-2137 JRT/DTS |
| Plaintiff, | ) Honorable John R. Tunheim ) Magistrate Judge David T. Schultz |
| v. | ) ) |
| UNITED STATES OF AMERICA, et al., | ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiff Rylee Silva-Vidinha sued the United States for denying medical care to her mother, Starsha Silva, while Ms. Silva was incarcerated at the Federal Correctional Institution, Waseca. The United States seeks to dismiss her claims based on a supposed error on Plaintiff's administrative claim form. But the U.S. never pointed out this error before and denied her administrative claim on the merits—after conducting an investigation into Plaintiff's claims. The U.S. should not be allowed to reconstruct its denial and forbid Plaintiff the opportunity for relief in court. Thus, the Court should deny the U.S.'s motion to dismiss.

**FACTUAL BACKGROUND**

On May 24, 2023, Starsha Silva ("the Decedent"), a 36-year-old mother of four, died in FCI-Waseca federal prison after prison staff denied her urgent medical care.

1

Plaintiff Rylee Silva-Vidinha is the daughter and next of kin of Starsha Silva, as well as the appointed representative of her mother's estate. As the Decedent was a resident of Hawaii and would have returned to Hawaii after her prison sentence, her estate was properly opened in Hawaii. That proceeding is public record, and the court order identified the Decedent's Hawaii domicile and listed her heirs. Plaintiff, an adult, was listed by full name as Ms. Silva's adult child and heir at law. *See* Ex. A.

Less than a month after Ms. Silva's death, Plaintiff's counsel, Loevy & Loevy, sent a preservation letter to the Bureau of Prisons ("BOP") and its officials. The letter noted that the firm "has been retained by the family of Starsha Silva" for claims arising from Ms. Silva's death and denial of medical care. *See* Ex. B.

In January 2024, Plaintiff submitted a Freedom of Information Act request to the BOP for all medical records and inmate files relating to the Decedent in order to obtain information for the anticipated lawsuit. The request was made by Loevy & Loevy "on behalf of Rylee Silva-Vidinha, the daughter of Silva Starsha and administrator of her estate." *See* Ex. C.

Then on August 14, 2025, Loevy & Loevy submitted an administrative claim to the BOP. The submission included a letter detailing the claims and the completed SF-95 form, "Claim for Damage, Injury, or Death." The form instructions stated:

> The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her

authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

*See* Ex. D. As Plaintiff is the proper claimant in a wrongful death claim (as surviving kin of Ms. Silva and administrator of her estate), Loevy submitted the claim on her behalf. The Loevy letter attached to the SF-95 stated that Ms. Silva was "survived by four children." *See* Ex. E. Loevy also attached the Decedent's autopsy report, which Plaintiff had access to only because of her family relation to Ms. Silva.

On August 27, 2024, the Bureau of Prisons responded to Plaintiff's administrative claim, seeking two corrections to the form: (1) a total sum of damages sought and (2) a signature on the form. Plaintiff included the total sum and added her signature, and Loevy returned the corrected form and materials to the BOP. *See* Ex. F. Plaintiff sent the materials on October 17, 2025, and the certified mail receipt confirms that the BOP received it on October 29, 2025. *See* Ex. G.

Six months later, the BOP had not reached a decision and Plaintiff's administrative claim was considered effectively denied, entitling her to seek relief in federal court under the Federal Torts Claims Act. Given that, Plaintiff sued on May 19, 2025, bringing the following claims:

- Count I: Wrongful death, survival, and medical negligence claims against the United States via the Federal Torts Claims Act

- Count II: *Bivens* claim against the individual federal employees for violation of the Eighth Amendment

- Count III: Failure to Train against individual state employees and/or private contractors

3

- Count IV: Medical Malpractice against individual state employees or private contractors

- Count V: Wrongful Death against individual state employees or private contractors

*See* ECF 1. Her complaint asserted that, "Plaintiff has satisfied the administrative exhaustion requirements of the FTCA by submitting a timely Standard Form 95 ("SF-95") on behalf of Ms. Silva's estate to the Bureau of Prisons. Six months have passed without disposition." *Id.* at 3 ¶ 8.

On June 10, 2025, the BOP formally denied Plaintiff's administrative claim. The denial letter stated in full:

> Your above-referenced tort claim has been considered for administrative review pursuit to 28 C.F.R. § 0.172, Authority: Federal Tort Claims and 28 C.F.R. Part 14, Administrative Claims Under Federal Tort Claims Act. Investigation of your claim did not reveal you suffered any personal injury as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment.
>
> As a result of this investigation, your claim is denied. This memorandum serves as a notification of final denial under 28 C.F.R. § 14.9 Final Denial of Claim. If you are dissatisfied with our agency's action, you may file suit in an appropriate U.S. District Court no later than six months after the date of mailing of this notification.

*See* Ex. H.

Then, on July 28, 2025, Defendants the United States and the BOP moved to dismiss Plaintiff's claims. Defendants put forth two arguments: (1) sovereign immunity bars Plaintiff's claims because she failed to exhaust her administrative remedies, and alternatively, (2) Plaintiff lacks authority to pursue her wrongful death claim. *See* ECF 16.

## LEGAL STANDARD

Under the federal notice pleading system a complaint need only assert a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In assessing a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." *Hastings v. Wilson,* 516 F.3d 1055, 1058 (8th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss for failure to state a claim, the court may consider extraneous materials that are outside the complaint if such materials are "necessarily embraced" by the pleadings. *Piper Jaffray v. Nat'l Union Fire Insur. Co.,* 967 F. Supp. 1148, 1152 (D. Minn. 1997) (citing *Vizenor v. Babbitt,* 927 F.Supp. 1193, 1198 (D. Minn. 1996)). *See also Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 n. 9 (8th Cir. 1997). Materials which are necessarily embraced by pleadings may include copies of underlying pleadings and documents incorporated by reference. *Piper Jaffray,* 967 F. Supp at 1152. Materials which are public record may also be considered in deciding a motion to dismiss. *E.E.O.C. v. Am. Home Prod., Corp.,* 199 F.R.D. 620, 627 (N.D. Iowa

2001) (citing *Missouri ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1107 (8th Cir.1999)). On the other hand, "written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleading," may be construed as "matters outside the pleadings," requiring treatment of the motion as one for summary judgment. *Hamm v. Rhone–Poulenc Rorer Pharm., Inc.,* 187 F.3d 941, 948 (8th Cir. 1999).

## DISCUSSION

Contrary to Defendants' assertions, Plaintiff has authority to bring her claims and exhausted her administrative requirements. The purpose of the Federal Tort Claims Act's ("FTCA") provision requiring presentation of claims to appropriate federal agency before maintaining an action against the United States is to provide notice to the relevant federal agency of claims, not to put up a barrier of technicalities or set a trap to defeat the claims of unwary claimants. *Starr v. United States*, 262 F. Supp. 2d 605 (D. Md. 2003); *see also*, *Wojciechowicz v. United States*, 474 F. Supp. 2d 283, 287-88 (D.P.R. 2007) (finding that as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement); *Interboro Mut. Indem. Ins. Co. v. United States*, 431 F. Supp. 1243 (E.D.N.Y. 1977) (concluding that the purpose of administrative claims amendments is not to eliminate claims but rather to give appropriate agency a chance to consider claims prior to litigation); *Exec. Jet Aviation, Inc. v. United States*, 507 F.2d 508, 515 (6th Cir. 1974).

A claim is presented properly to an agency within meaning of the FTCA when the agency is given sufficient written notice to commence investigation and claimant places a value on the claim. *Avery v. United States*, 680 F.2d 608 (9th Cir. 1982). In other words, an administrative notice that includes both a statement of the facts and a demand for a specific amount of damages informs the agency of the claim, gives it sufficient information to investigate, and enables it to ascertain whether the claim could or should be settled. *Blue v. United States*, 567 F. Supp. 394, 397 (D. Conn. 1983).

Here, Plaintiff's notice has more than satisfied this purpose. In September 2024, Plaintiff sent a corrected SF-95 that provided the BOP with clear notice that the claimant was Rylee Silva-Vidinha, not Loevy & Loevy. This SF-95 form was signed by Rylee Silva-Vidinha and her name was printed under her signature in Box 13a. However, this did not deter the BOP from now arguing that it believed the claimant was Loevy, a Chicago-based civil rights law firm. This argument is disingenuous at best for various reasons as explained throughout this brief.

**I.    Plaintiff Had Authority to Bring the Administrative Claim.**

On December 13, 2023, a Hawaii probate court appointed Rylee Silva-Vidinha to be personal representative of her mother's estate, pursuant to Rule 34(a) of the Hawaii Probate Rules. *See* Ex. I, P. No. 5CLP-23-0000I23.

The Hawaii Probate Code confers authority on Plaintiff to bring her administrative claim and this lawsuit. The Code states:

> (a) . . . . A personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and this chapter, and as expeditiously and efficiently as is

7

> consistent with the best interests of the estate. The personal representative shall use the authority conferred upon the personal representative by this chapter, the terms of the will, if any, and any order in proceedings to which the personal representative is party for the best interests of successors to the estate.
>
> . . . .
>
> (c) Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in this State at the decedent's death has the same standing to sue and be sued in the courts of this State and the courts of any other jurisdiction as the decedent had immediately prior to death.

§560:3-703.

Under this section, Plaintiff has authority to bring suit in this jurisdiction or any other jurisdiction where Ms. Silva had jurisdiction prior to her death. Plaintiff also has authority to bring the administrative claim and this lawsuit under Minnesota law, which states:

> If the trustee, after appointment and qualification, commences an action for death by wrongful act in a county other than that in which the trustee was appointed, a certified copy of the petition, the order entered thereon and the oath shall be filed in the court where such action be commenced, at the time the summons and complaint are filed therein, and the court file and jurisdiction over the trust will thereupon be transferred to such court.

*See* Minn. Gen. R. Prac., Rule 144. Actions for Death by Wrongful Act.[1]

By the BOP's own instructions and correspondence, Plaintiff had authority to bring the claims. Defendants' dismissal arguments hinge on their narrow and flawed interpretation of Minnesota's Wrongful Death law. In relevant part, the statute provides,

---

[1] Plaintiff intends to file the probate order as a separate docket entry following this response submission.

> Upon written petition by the surviving spouse or one of the next of kin, the court having jurisdiction of an action falling within the provisions of subdivisions 1 or 2, shall appoint a suitable and competent person as trustee *to commence or continue* such action and obtain recovery of damages therein. The trustee, before commencing duties shall file a consent and oath. Before receiving any money, the trustee shall file a bond as security therefor in such form and with such sureties as the court may require.

Minn. Stat. Ann. § 573.02 (West) (emphasis added).

Defendants wish to impose a procedural requirement on Plaintiff that simply does not exist—they contend that Plaintiff needed to be appointed trustee before submitting her administrative claim to the BOP. Indeed, if the federal government insisted on a claimant being a trustee for the purposes of exhausting a wrongful death claim in Minnesota, it would render wrongful death actions impossible to litigate given the short window for bringing an administrative claim against the federal government.

However, the statute does not include such mandatory language, nor does it indicate that a trustee needs to be appointed prior to bringing a lawsuit or administrative matter. At bottom, Minnesota's wrongful death act "was enacted for manifest purpose of granting [a] right of action that did not exist at common law to [the] personal representative of decedent for exclusive benefit of surviving spouse or next of kin of deceased person, provided injured party himself could have maintained action had he lived." *Beck v. Groe*, 70 N.W.2d 886 (Minn. 1955).

By initiating comparable proceedings in Hawaii, where the Decedent was domiciled before prison, Plaintiff has fulfilled the purpose and requirements of the wrongful death statute. Plaintiff complied with the SF-95 instructions and brought the administrative claims on her *own* behalf, as a survivor of the Decedent and administrator

9

of her estate. Loevy was the claimant's legal representative. Defendants' circular argument carries no weight and should be rejected.

## II. The BOP Knew Plaintiff Had Authority to Bring the Administrative Claim.

Defendants' entire argument hinges on extraneous facts that contradict the allegations in the Complaint. Plaintiff alleged that she properly exhausted, and that allegation must be accepted as true at this stage. But in any event, the allegation is true. The BOP conducted an investigation and denied Plaintiff's claim on grounds that she did not have a claim, not that she did not have authority to bring the claim. The BOP had multiple opportunities to request more information or leave the investigation open if it felt they did not have the necessary materials. Indeed, the BOP did ask for additional information but never sought clarification on Plaintiff or her attorneys' authority for her own claims. They cannot now change their decision to deny Plaintiff relief in both forums available to her by re-imagining how the administrative process happened to bolster their arguments.

Further evidence of this comes from the BOP paralegal specialist, who reported that they searched for claims relating to Starsha Silva in the BOP's system and located the associated claim that Plaintiff's counsel submitted on her behalf, Case ID TRT-NCR-2025-0144 ("the Silva Claim"). *See* ECF. 17, ¶4. In the "Case Details," the claim is marked as one that is not pro se (see below), which further suggests that the BOP understood that Loevy was and is the legal representative of Starsha Silva's estate, through her family.



This undermines the BOP's assertion that it believed Loevy was the claimant of the Silva Claim. The Court should deny Defendants' motion.

### III. Plaintiff's Administrative Claim was not Defective, and She Exhausted Her Administrative Requirements.

Despite the BOP's knowledge of Plaintiff's authority, Defendants now contend that Plaintiff's administrative claim was defective. They argue that, because she supposedly did not present evidence of her authority or relation to Starsha Silva, she failed to exhaust her administrative requirements. In support of their position, they primarily rely on *Mader v. United States*, 654 F. 3d 794 (8th Cir. 2011).

Defendants fall short again. In January 2024, before submitting the Silva Claim, Plaintiff's counsel requested Decedent's prison records from the BOP through FOIA. In doing so, Plaintiff sent a signed release that states the request is being "made on behalf of Rylee Silva-Vidinha, daughter and administrator of the estate of Starsha Silva's estate."

11

*See* Ex. C, DOJ 361 Form. Although this may not have been the BOP's preferred method to receive this information, the BOP received it nonetheless. Afterall, the FTCA presentment requirement was not intended to allow an agency to insist on proof of a claim to its satisfaction before a claimant becomes entitled to a day in court. *Avery v. United States*, 680 F.2d 608, 611 (9th Cir. 1982).

Notably, not once, in any of the pre-suit correspondence between the BOP and Plaintiff's counsel, did the BOP request documentation concerning Rylee Silva's relation to Starsha Silva or her authority to bring the claim. In fact, the BOP did not even suggest that they needed more information from Plaintiff or her counsel about her authority nor did they question her status as claimant. This alone sets the present case apart from the circumstances in *Mader*, where the federal agency expressly requested documentation demonstrating the plaintiff's authority to act on behalf of the estate. Since *Mader*, the Eighth Circuit has held that failing to strictly comply with the claim presentment requirements is not fatal to the claim. *See A.M.L. by & through Losie v. United States*, 61 F.4th 561, 565 (8th Cir. 2023) (concluding that specifying a range of damages satisfies the sum certain requirement under the FTCA and its corresponding regulations).

In *Mackovich v. United States,* the BOP denied the plaintiff's administrative claim in a letter stating, "Investigation of your claim did not reveal you suffered any personal injury as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment." 630 F.3d 1134, 1135 (8th Cir. 2011). The Eighth Circuit reversed the district court's dismissal of the plaintiff's action and concluded that the plaintiff properly exhausted his administrative claims. *Id.* In reaching

this decision, the court reasoned that the BOP's investigation must have included investigating all of his claims. *Id.*

In this case, the BOP denied Plaintiff's claim on the same grounds, barring its failure to exhaust defense. The BOP asserted that they conducted an investigation into the claim and denied it on the basis that their investigation "did not reveal [Plaintiff] suffered any personal injury as a result of the negligent acts or omissions of the Bureau of Prisons employees acting within the scope of their employment." *See* ECF 17-6.

Like the federal agency in *Mackovich,* the BOP used the same language in its letter informing Plaintiff that her administrative claim was denied. Therefore, based on the Eighth Circuit's logic in *Mackovich*, the BOP denied the Silva Claim after it investigated the merits of Plaintiff's claim. And by denying the claim on the merits, "the [agency] demonstrated that they had sufficient notice to initiate investigation. The agency's actions are persuasive evidence that the jurisdictional requirement of minimal notice was satisfied." *Ford v. United States*, 640 F. Supp. 2d 1065, 1071 (E.D. Ark. 2009) (citing *Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.,* 724 F.2d 776 (9th Cir. 1984)).

Several district and appellate courts around the country have followed this line of reasoning. *See, e.g., Ford v. United States*, 640 F. Supp. 2d 1065 (E.D. Ark. 2009); *Dykes v. United States*, 794 F. Supp. 334, 338 (D.S.D. 1992); *see also*, *Kinlichee v. United States*, 929 F. Supp. 2d 951 (D. Ariz. 2013); *Wojciechowicz,* 474 F. Supp. 2d at 287-88. For example, in *Executive Jet Aviation, Inc. v. United States*, the Sixth Circuit held that the failure to name the insurers in the administrative claim did not bar the government's consideration of the claim. 507 F.2d 508, 517 (6th Cir. 1974); *see also Sky Harbor Air*

13

*Service, Inc. v. United States*, 348 F.Supp. 594 (D.Neb.1972). In *Ozark Air Lines, Inc. v. Delta Air Lines, Inc.*, the claim was timely filed by the lessee rather than the owner of the property. 63 F.R.D. 69, 72 (N.D.Ill.1974). The court found that the lessee was "for all practical and equitable purposes" the owner and that the consequential damages claimed were those of the lessee. *Id.*

Additionally, the Eighth Circuit has not defined what evidence is sufficient to demonstrate an attorney's authority to bring an administrative claim on behalf of a beneficiary. *See Puetz v. United States*, 2023 WL 4186574, at *9 (D. Minn. June 26, 2023), *aff'd,* No. 23-2710, 2024 WL 1739442 (8th Cir. Apr. 23, 2024). But the cases that discuss this issue suggest that when attorneys provide the agency with a simple letter of representation, doing so satisfies the requirement to provide proof of attorney's authority to bring an administrative claim. *See, e.g.*, *Sleighter v. United States*, No. 5:24-CV-05014-RAL, 2025 WL 238880 (D.S.D. Jan. 17, 2025) (ruling that the plaintiff provided sufficient evidence of the attorney's authority based on the letter mailed to the agency on the law firm's letterhead); *Winn v. United States Postal Serv.*, No. CV 19-00842-BAJ-RLB, 2020 WL 7630685 (M.D. La. Dec. 22, 2020) (concluding that the attorney's letter of representation satisfies the requirement to provide proof of authority).

The Eighth Circuit has made clear that the exhaustion requirement is met where "an identifiable claimant had filed a claim for a sum certain thus giving the government the opportunity to evaluate and settle the claim later sued upon." *Lunsford v. United States*, 570 F.2d 221, 226–27 (8th Cir. 1977) (collecting cases). This Circuit has acknowledged that "the clear purpose behind the administrative exhaustion requirement

14

of the FTCA is to encourage prelitigation settlement and the various governmental agencies are given broad authority to settle the claims." *Id.* at 227. Plaintiff clearly presented her claim, and the BOP exercised its authority to deny prelitigation settlement. Therefore, the Court should deny Defendants' motion on this basis.

**IV.   In any Event, Plaintiff Does Not Need to be Appointed Trustee Under Minnesota Law to Maintain FTCA Claims in Federal Court.**

Defendants barely acknowledge Plaintiff's Hawaii probate proceeding, as it nullifies most of the points in their Motion. Nor do they instruct the Court on which state's law should apply. As discussed, under Hawaii and Minnesota law, Plaintiff has authority to bring the present case.

Each case cited by Defendants is distinguishable. In *Mader v. U.S.*, the defendants presented a similar argument for dismissal. However, in that case, the federal agency had specifically requested proof from the plaintiff of her status as personal representative of the estate. When the plaintiff never provided that documentation, the agency denied the plaintiff's claim based on her lack of authority to bring it. Here, that did not happen.

Defendants' other cited cases are non-binding and/or are equally distinguishable. *See Eagle v. United States*, 692 F. Supp. 3d 864 (D.S.D. 2023); *Spanier as Trs. of Spanier Fam. Tr. v. United States Fish & Wildlife Serv.*, No. 21-CV-1618 (WMW/LIB), 2022 WL 2275828 (D. Minn. June 23, 2022) (case arising from land use dispute with plaintiffs being trustees of a family trust); *Pipes as Next Friends for C.P. v. Kirksville Missouri Hosp. Co., LLC*, No. 2:22-CV-0047 PLC, 2022 WL 17829892 (E.D. Mo. Dec. 21, 2022); *Hennager v. United States*, No. 3:19-CV-00258, 2020 WL 7024481 (D.N.D. Nov. 30,

2020); *Parrott v. United States*, No. 19-00019-CV-W-ODS, 2019 WL 3241174 (W.D. Mo. July 18, 2019); *Runs After v. United States*, No. CIV 10-3019-RAL, 2012 WL 2951556 (D.S.D. July 19, 2012), *aff'd sub nom. After v. United States*, 511 F. App'x 596 (8th Cir. 2013).

Defendants cite two Minnesota state cases, but neither support Defendants' argument.

**V.     Even if Defendants' Motion is Granted, Plaintiff Should be Given the Opportunity to Amend or Refile Her Complaint.**

Even if the Court agrees with Defendants, the proper procedure would be for Plaintiff to file the probate order on this case's docket so that her authority may transfer to this Court as stated in Minnesota Rule 144.04:

> If the trustee, after appointment and qualification, commences an action for death by wrongful act in a county other than that in which the trustee was appointed, a certified copy of the petition, the order entered thereon and the oath shall be filed in the court where such action be commenced, at the time the summons and complaint are filed therein, and the court file and jurisdiction over the trust will thereupon be transferred to such court.

Minn. Gen. R. Prac., Rule 144.04, Transfer of Action.

Defendants have not presented any valid argument for dismissal, but if the Court grants their motion, Plaintiff respectfully requests an opportunity to amend. Plaintiff has attached a proposed amended complaint as Exhibit J. The amended complaint includes facts regarding Ms. Silva's domicile, Plaintiff's authority, and Plaintiff's exhaustion. Plaintiff's position is that those facts are already incorporated into the Complaint by reference, and reflected in public record, but the amended complaint leaves no doubt as to Plaintiff's authority to bring suit and exhaustion of her administrative remedies.

16

Even if the Court dismisses Plaintiff's state law claims, her claims are not time barred and she will attempt to refile the federal claims. Plaintiff is within six months of the BOP's denial, and within three years of Ms. Silva's death. Defendants have not presented any developed argument for why Plaintiff's claims are time-barred.

Even if Defendants had presented any valid argument that Plaintiff's claims are time-barred because of some defect in her timely administrative claim, the doctrine of equitable tolling would apply. In *U.S. v. Wong*, the Supreme Court in a 5-4 decision held that the two-year and six-month limitations periods under the FTCA were non-jurisdictional and subject to equitable tolling. 575 U.S. 402, 412, 420 (2015).

Plaintiff has been diligent in pursuing her claim. *See Mancini v. United States*, No. 20-CV-2532 (ECT/DTS), 2022 WL 543179, at *3 (D. Minn. Jan. 31, 2022), *report and recommendation adopted sub nom. Mancini v. Fed. Bureau of Prisons*, No. 20-CV-2532 (ECT/DTS), 2022 WL 542450 (D. Minn. Feb. 23, 2022) (finding diligence where plaintiff showed his attempts to pursue his claim within the allotted time period).

Defendants should not be allowed to run out Plaintiff's clock, then provide a hindsight justification for denying her claim, after the time for her to rectify it has expired. If that were the law, Defendants could avoid liability in almost every case with a revisionist account.

## CONCLUSION

For all of the above reasons, this Court should deny Defendants' motion to dismiss in its entirety.

Respectfully Submitted,

*/s/* Gianna Gizzi

Maria Makar
Gianna Gizzi
LOEVY & LOEVY
311 North Aberdeen Street,
Chicago, IL 60607
p. (312) 243-5900
e. gizzi@loevy.com

-and-

Josh Jacobson (#242585)
Josh Jacobson
The Law Office of Josh Jacobson, P.A.
120 South Sixth Street, Suite 1515
Minneapolis, Minnesota 55402
p. (612) 339-5111
e. joshjacobsonlaw@gmail.com

-and-

Catherine Sevcenko
The National Council for Incarcerated &
Formerly Incarcerated Women and Girls
300 New Jersey Ave NW Suite 900
Washington, DC 20001
p. (617) 299-2604
e. csevcenko@thecouncil.us

*Attorneys for Plaintiff Rylee Silva-Vidinha as Personal Representative of the Estate of Starsha Silva and on her own behalf.*