UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RYLEE SILVA-VIDINHA, as Personal Representative of the ESTATE OF STARSHA SILVA, and on her own behalf,<br><br>Plaintiff,<br><br>against<br><br>UNITED STATE OF AMERICA; FEDERAL BUREAU OF PRISONS; WARDEN MICHAEL SEGAL (FCI WASECA), in his individual capacity; SHEILA JOHNSON, in her individual capacity; MS. KOZIOLEK, in her individual capacity; SYED FATEH HYDER, MD, in his individual capacity; BENJAMIN RICE, MD, in his individual capacity; LINDA LINDNER, MD, in her individual capacity; S. TAYLOR, PA-C, in their individual capacity; C. MEAD, NRP, in their individual capacity; J. PETERSON, BSN, in their individual capacity; HOLLY SIETSMA, NRP, in their individual capacity; T. WEISER, RN, in their individual capacity; DANIELLE SKOGLAND, RN, in their individual capacity; JOHN and JANE DOES 1-10, unknown BOP medical and custodial staff,<br><br>Defendants. | CASE: 0:25-cv-02137-JRT-DTS<br><br><br>**DEFENDANT SHEILA JOHNSON'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

## **INTRODUCTION**

Defendant Sheila Johnson brings this motion to dismiss Plaintiff Rylee Silva-Vidinha's complaint for failure to state a claim upon which relief may be granted. This wrongful death action arises out of medical care and treatment of Decedent Starsha Silva

during her incarceration at the Federal Correctional Institution in Waseca, Minnesota (FCI Waseca) prior to her death on May 24, 2023. Plaintiff alleges that various defendants, including Johnson, provided negligent medical care to Silva, which resulted in her death.

The complaint fails to state a claim against Johnson on three grounds: (1) Johnson is not a federal agent and is therefore not subject to any of Plaintiff's federal claims; (2) Plaintiff is not a court-appointed trustee authorized to bring a wrongful death claim on behalf of Silva's next of kin, therefore her state-law claims are legal nullities; and (3) Plaintiff fails to state a medical malpractice claim against Johnson. As a result, the court should dismiss her complaint in its entirety and with prejudice.

## STATEMENT OF FACTS[1]

### I. Background facts

Decedent Starsha Silva had a "documented history" of cardiac problems, including congenital heart disease, a prior heart murmur, and had required "prior cardiac intervention." Compl. ¶ 36. For months preceding May 2023, while she was incarcerated at FCI Waseca, Silva "regularly report[ed] symptoms including fatigue, shortness of breath, and chest pain." *Id.* On May 2, 2023, Silva was transported to the Mayo Clinic[2] for a cardiac consultation, where physicians diagnosed her with severe valvular heart disease

---

[1] Because, for the purposes of this motion, the court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)," these facts are derived exclusively from the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Johnson does not admit the truth of any facts alleged therein, nor does she waive any defenses to those allegations.

[2] The complaint does not state which Mayo Clinic facility Silva visited.

impacting both the tricuspid and aortic valves and recommended immediate surgical intervention. Compl. ¶ 37.

Silva's case manager, who had accompanied her to the appointment, determined that an adequate number of guards were not available to accompany Silva to surgery, and that she could not undergo the procedure at that time. Compl. ¶ 38. The case worker then required Silva to return to FCI Waseca, despite a physician's protests. Compl. ¶ 39.

The complaint alleges that, despite knowing that physicians recommended immediate surgery, Silva's case manager did nothing to facilitate scheduling the procedure Silva required. Compl. ¶ 43. It also alleges that FCI Waseca medical staff—among whom plaintiff erroneously includes Johnson—cancelled medical appointments Silva needed before she could have surgery. Compl. ¶ 45. Silva also apparently submitted a written compassionate release request, which the complaint alleges FCI Waseca's warden did not answer. Compl. ¶ 44.

On May 24, 2023, Silva collapsed in her cell and was found unresponsive. Compl. ¶¶ 52-53. Correctional officers administered Narcan and CPR but Silva died shortly thereafter. Compl. ¶ 54. An autopsy confirmed that Silva died from complications from severe heart disease. Compl. ¶ 55.

Plaintiff alleges that Silva "died because federal officials and BOP employees failed to provide constitutionally adequate medical care, although external specialists at the Mayo Clinic diagnosed her with a life-threatening heart valve disease and recommended immediate surgical intervention." Compl. ¶ 2. With respect to Johnson specifically, Plaintiff alleges that Johnson "was directly involved in Ms. Silva's medical care and

3

cancelled preoperative appointments," and that her "actions and omissions directly contributed to the delay in medical care, worsening Ms. Silva's condition." Compl. ¶¶ 40-41.

## II. Procedural facts

Plaintiff commenced this wrongful death lawsuit on May 19, 2025. *See generally* Compl. Plaintiff purports to be the "duly appointed Special Administrator of the Estate of Decedent Starsha Silva." Compl. ¶ 9. She has named fourteen identified defendants, including Johnson, whom Plaintiff alleges "was a nurse at FCI Waseca who participated in decisions regarding [Decedent]'s medical treatment and had [Decedent] under her care." Compl. ¶ 13. Plaintiff does not allege any actual facts supporting Johnson's alleged status as "a nurse," nor does she allege any actual facts suggesting Johnson was an employee of the Bureau of Prisons.

Against these fourteen named defendants, plus additional John and Jane Doe defendants, Plaintiff alleges five claims: (1) medical malpractice/wrongful death under the Federal Tort Claims Act (FTCA); (2) violation of Silva's Eighth Amendment Rights (a *Bivens* claim); (3) supervisory and policy claims against the United States; (4) medical malpractice under Minnesota state law; and (5) wrongful death under Minnesota state law. Compl. ¶¶ 66-82. With the exception of Count III, which she asserts specifically against the United States as a defendant and identifying three individual defendants by name in her *Bivens* claim, Plaintiff does not limit her claims to any specific defendant or group of defendants.

4

## ARGUMENT

**I.  Motion to dismiss standard of review**

Under Fed. R. Civ. P. 12(b)(6), a defendant may forego filing an answer and may instead bring a motion to dismiss the complaint on the grounds that the plaintiff failed to state a claim upon which relief can be granted. Such a dismissal "serves to eliminate actions which are fatally flawed in their legal premises and destined to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of Charles*, 244 F.3d 623, 627 (8th Cir. 2001). To avoid dismissal, "a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." *Id*.

The court should grant a motion to dismiss if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 547 (2007). A complaint states a plausible claim for relief if its "factual content… allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In considering a motion to dismiss, courts accept a plaintiff's factual allegations as true but need not do so with legal conclusions. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997).

**II.     Plaintiff fails to state a federal claim against Johnson.**

Plaintiff's Counts I, II, and III are all federal law claims aimed at the federal government and/or its employees.[3] None of these claims are properly pleaded against Johnson, however, where the proper defendant in an FTCA claim is *only* the United States and where she is not a federal agent and therefore is not a proper defendant on a *Bivens* claim.

**A.     Plaintiff fails to state a claim against Johnson in Count I where the only proper defendant in an FTCA claim is the United States.**

Plaintiff's Count I asserts an FTCA claim—presumably against all defendants—based on allegation that "[t]he BOP and its medical staff, acting within the scope of federal employment, failed to provide the requisite standard of care to Ms. Silva." Compl. ¶ 67. The FTCA provides a limited waiver of sovereign immunity allowing the Federal Government to be held liable "for … personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *United States v. Orleans*, 425 U.S. 807, 813 (1976). The FTCA provides the exclusive remedy for individuals harmed by the negligent acts or omissions of a federal employee. 28 U.S.C. § 2679(b). But FTCA claims

---

[3] Plaintiff asserts Count III specifically and exclusively against the United States. As a result, Johnson understands this claim is *not* being made against her individually and therefore makes no argument as to that claim here.

6

may only be brought against the *United States* as a defendant, not against individual federal employees or their employing agencies. *Id.*; *see Duncan v. Dep't of Labor*, 313 F.3d 445, 447 (8th Cir. 2002) (per curiam) ("[A] federal agency cannot be sued under the Federal Tort Claims Act [because] the United States is the proper defendant."); *Blackwell v. SSA*, 2024 WL 477038, at *4 (D. Minn. Feb. 7, 2024) ("FTCA claims may only be brought against the United States, not its agencies … or employees.").

Regardless whether Johnson is a federal employee, Plaintiff cannot assert FTCA claims against her individually. The Court should dismiss Count I against Johnson.

### B. Plaintiff fails to state a *Bivens* claim against Johnson where she was not a federal employee or agent.

Plaintiff's Count II asserts a *Bivens* claim against Johnson, among other individual defendants. A *Bivens* action is limited to personal injury by a particular federal agent, *Ouzts v. Cummins*, 825 F.2d 1276 (8th Cir. 1987), and may only be brought against an individual official for his or her own acts, not the acts of others, *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017). To state an actionable *Bivens* claim, a plaintiff must show "(1) [a] violation of a constitutional right, (2) committed by a [Federal] actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Mendez v. FMC-Rochester*, No. 07-CV-2609(JMR/RLE), 2007 WL 2320547, at *3 (D. Minn. Aug. 10, 2007).

Plaintiff does not claim that Johnson was a federal actor, nor does she claim that Johnson was acting under color of federal law. *Cavan v. United States*, No. 20-CV-1072 (KMM/LIB), 2022 WL 837685, at *6 (D. Minn. Jan. 31, 2022) ("A plaintiff asserting a claim under *Bivens* must show the violation of a valid constitutional right by a person acting

7

under color of federal law"). Instead, she makes conclusory statements that Johnson is a nurse (she is not) and implies that she was employed by FCI Waseca (she was not). Johnson is not a federal agent, therefore she is not subject to a *Bivens* claim. But even if Johnson were a federal agent, Plaintiff has not pleaded sufficient facts to state a claim that Johnson personally acted with the requisite culpability and causation to violate Silva's constitutional rights. *See Hunter v. Page Cnty., Iowa*, 102 F.4th 853, 875 (8th Cir. 2024) (affirming dismissal of a claim under Fed. R. Civ. P. 12(b)(6) where plaintiffs spent only a few pages in a 219-page complaint on the claim and raised only "speculative" and "conclusory" "bare bones allegations"). The limited assertions about Johnson's alleged actions in the complaint create no reasonable inference that her personal actions could rise to an actionable *Bivens* claim. The Court should dismiss Count II as against Johnson.

**III.    Plaintiff has not satisfied the statutory prerequisites to assert a wrongful death claim under Minnesota law, therefore her state-law claims are legal nullities.**

Under Minnesota law, wrongful-death claims are purely statutory in nature. *Ortiz v. Gavenda*, 590 N.W.2d 119, 121 (Minn. 1999). Accordingly, Minnesota has always required a plaintiff seeking to assert a wrongful-death claim to strictly comply with the statutory requirements. *Bonhiver v. Fugelso, Porter, Simich & Whiteman, Inc.*, 355 N.W.2d 138, 141 (Minn. 1984). Among those statutory requirements is the mandate that any plaintiff in a wrongful death action must be appointed by a Minnesota court as trustee for the decedent's next of kin before commencing a wrongful death action. Minn. Stat. § 573.02; *Ortiz*, 590 N.W.2d at 123-24; *Regie de l'assurance Auto. Du Quebec v. Jensen*, 399 N.W.2d 85, 90 (Minn. 1987).

8

By section 573.02's plain language, only a person who has been appointed by a court to serve as trustee may commence a wrongful-death action. Until a specific individual is determined to be a "suitable and competent person" and appointed by a court as trustee, no one has legal capacity to commence a wrongful-death action. *See Save Our Creeks v. City of Brooklyn Park*, 682 N.W.2d 639, 648 (Minn. App. 2004) ("[T]he wrongful death act[] … requires the appointment of a trustee as a condition precedent to filing an action .… [I]t is the appointment of the trustee that forms the legal capacity for a successor of the deceased to bring or to continue the action for wrongful death."), *aff'd,* 699 N.W.2d 307 (Minn. 2005); *Kolles v. Ross*, 418 N.W.2d 733, 738 (Minn. App. 1988) (stating "it is the trustee who has the exclusive right to maintain the action or to negotiate a settlement for the benefit of the next of kin"). Commencing a lawsuit before being appointed as a trustee for the next of kin renders the lawsuit a legal nullity. *Ortiz*, 590 N.W.2d at 123. This is because the appointment of a trustee is an "exercise of the fundamental legal principle that those entitled to recovery as a result of the wrongful death *shall be represented by the trustee without compromise*." *Id*. at 124 (emphasis added).

Plaintiff is not, and has not claimed to be, a court-appointed trustee for Silva's next of kin, as required for her to have standing to sue for wrongful death in Minnesota. She asserts that she is the "duly appointed Special Administrator of the Estate of Decedent Starsha Silva" and sues as "Personal Representative of the ESTATE OF STARSHA SILVA," but this does not meet the requirements to assert wrongful death under Minn. Stat. § 573.02. Only a *wrongful death trustee* may sue for wrongful death in Minnesota, a decedent's estate's personal representative or "special administrator" does not hold that

9

power absent separate appointment. *See Steinlage ex rel Smith v. Mayo Clinic Rochester*, 435 F.3d 913, 917 (8th Cir. 2006) ("[O]nly a court-appointed wrongful death trustee may maintain a wrongful death action, and the wrongful death trustee does not represent the estate of the decedent."); *Mattingly v. Am. Fam. Ins.*, 6 N.W.3d 787, 792 (Minn. App. 2024) (clarifying that a personal representative does not have standing to sue for wrongful death absent court appointment as wrongful death trustee because trustee "act[s] for the benefit of the decedent's surviving spouse and next of kin, not the decedent's estate"). Because Plaintiff purportedly commenced a wrongful death suit without being appointed trustee under Minn. Stat. § 573.02, subd. 3, her state-law medical malpractice and wrongful death claims are a legal nullity that the court should dismiss. *Ortiz*, 590 N.W.2d at 123.

**IV.   Plaintiff fails to state a claim for medical malpractice, which forms the basis for her putative wrongful death claim, and the court should dismiss both claims as against Johnson.**

Setting aside Plaintiff's lack of standing to bring a wrongful death claim here, she has not and cannot state a claim for medical malpractice, the alleged negligence underlying her wrongful death allegation against Johnson.[4] Medical malpractice is a professional negligence claim premised on allegations that a medical professional was negligent in performing his or her duties to the aggrieved party. *See Tousignant v. St. Louis County*, 615 N.W.2d 53, 56 n.1 (Minn. 2000) (noting that a medical malpractice claim is a claim

---

[4] Minnesota does not recognize a "wrongful death" action separately from a "medical malpractice" action. *See MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 716 (Minn. 2008) (noting section 573.02 allows a trustee to maintain a wrongful death action based on medical malpractice). Accordingly, where Plaintiff's medical malpractice claim fails, her wrongful death claim also fails.

"against health care providers for failing to exercise that standard of care required of them in care and treatment). A "health care provider" is defined as "a physician, surgeon, dentist, or other health care professional or hospital, including all persons or entities providing health care." Minn. Stat. § 145.682, subd. 1. "Health care" is defined as "professional services rendered by a professional or an employee of a professional and services furnished by a hospital… or other institution for the hospitalization or care of human beings." Minn. Stat. § 145.61, subd. 4.

Plaintiff has not pleaded sufficient facts to state a plausible claim that Johnson is liable for medical malpractice under Minnesota law. First, Plaintiff alleges no basis for asserting Johnson is "a nurse at FCI Waseca." Compl. ¶ 13. And, while Plaintiff makes the conclusory statement that Johnson "participated in decisions about Ms. Silva's medical treatment," the only actual action Plaintiff alleges Johnson engaged in was "cancel[ing] preoperative appointments." Compl. ¶¶ 13, 40. The first allegation—that Johnson is "a nurse"—is unsupported by any allegation that she is a licensed medical professional. It is also false. And the second allegation—that Johnson cancelled appointments—alleges at best that Johnson's involvement in this matter was merely an administrative function.

None of these allegations sufficiently allege a medical malpractice claim against Johnson. Medical malpractice claims "involve negligent conduct that is *connected to a person's professional licensure.*" *Paulos v. Johnson*, 597 N.W.2d 316, 320 (Minn. App. 1999) (emphasis added); *see Daulton, trustee for Daulton v. TMS Treatment Ctr., Inc.*, 2 N.W.3d 331, 338 (Minn. App. 2024) (same). Plaintiff avers Johnson is a nurse but alleges no facts that support that conclusory allegation.

11

It is true that the complaint asserts that unspecified "defendants" owed Silva "a duty of care consistent with Minnesota state medical standards" and that unspecified "defendants" breached that duty. Compl. ¶¶ 79-80. But this is a legal conclusion—not a factual allegation—to which the court owes no deference. *See Ashcroft*, 556 U.S. at 664 ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."). And the affidavit of expert review[5] cannot provide the factual support necessary because it is so vague that it merely states that Plaintiff's counsel reviewed this case with "a qualified medical expert" whose opinion is that "one or more defendants deviated from the applicable standard of care." ECF Doc. 2. This non-specific statement about "one or more defendants" does not satisfy Plaintiff's pleading as to *Johnson* where Plaintiff has not alleged facts supporting the conclusion that *Johnson* is a defendant to whom a "standard of care" applies.

Moreover, the only specific action Plaintiff alleges Johnson undertook—cancelling appointments—is an administrative function and not a function requiring professional licensure. But medical malpractice claims "necessarily flow[] from a therapeutic relationship, rather than administrative or policymaking functions." *Paulos*, 597 N.W.2d

---

[5] Plaintiff did not serve an affidavit of expert review on Johnson with the complaint. *See* Minn. Stat. § 145.682, subd. 2 (requiring plaintiff to serve affidavit of expert review on defendant with summons and complaint). The undersigned ultimately located an affidavit of expert review on the court's docket. *See* ECF Doc. 2.

12

at 320. In other words, the only actual allegation against Johnson does not meet the criteria for a properly pleaded medical malpractice claim. As a result, Plaintiff fails to state a claim for medical malpractice—and wrongful death—and the court should dismiss her Counts IV and V.

## CONCLUSION

Plaintiff fails to state any claim for relief against Defendant Sheila Johnson. For the reasons discussed herein, Johnson respectfully asks this court to dismiss Plaintiff's complaint in its entirety and with prejudice.

Dated: December 19, 2025

*/s/ Besse H. McDonald*
Besse H. McDonald (#0398662)
**MEAGHER & GEER, P.L.L.P.**
33 South Sixth Street, Suite 4300
Minneapolis, MN 55402
612-338-0661
bmcdonald@meagher.com

*Attorneys for Defendant Sheila Johnson*