**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

RYLEE SILVA-VIDINHA, *as personal representative of the Estate of Starsha Silva, and on her own behalf*,

Plaintiff,

v.

UNITED STATES OF AMERICA; MICHAEL SEGAL, *Warden (FCI Waseca) in his individual capacity*; SHEILA JOHNSON*, in her individual capacity*; MS. KOZIOLEK*, in her individual capacity*; SYED FATEH HYDER, *MD, in his individual capacity*; BENJAMIN RICE, *MD, in his individual capacity*; LINDA LINDNER, *MD, in her individual capacity*; S. TAYLOR, *PA-C, in their individual capacity*; C. MEAD, *NRP, in their individual capacity*; J. PETERSON, *BSN, in their individual capacity*; HOLLY SIETSMA, *NRP, in their individual capacity*; T. WEISER, *RN, in their individual capacity*; DANIELLE SKOGLAND, *RN, in their individual capacity*; JOHN AND JANE DOES 1–10, *unknown BOP medical and custodial staff*,

Defendants.

Civil No. 25-2137 (JRT/DTS)

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE MOTIONS TO DISMISS OF SHEILA JOHNSON AND OTHER INDIVIDUAL DEFENDANTS**

---

Catherine Sevcenko, **THE NATIONAL COUNCIL FOR INCARCERATED AND FORMERLY INCARCERATED WOMEN AND GIRLS**, 300 New Jersey Ave Northwest, Suite 300, Washington DC 20001; Gianna Gizzi and Jon Loevy, **LOEVY & LOVEY ATTORNEYS AT LAW**, 311 North Aberdeen Street, Suite 300, Chicago, IL 60607; Josh Jacobson, **LAW OFFICE OF JOSH JACOBSON, P.A.**, 120 South Sixth Street, Suite 1515, Minneapolis, MN 55402, for Plaintiff.

Trevor Brown, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendants United States of America, Michael Segal, Amanda[1] Koziolek, Syed Fateh Hyder, Benjamin Rice, Linda Lindner, C. Mead, J. Peterson, Holly Sietsma, T. Weiser, Danielle Skogland, and John and Jane Does 1-10.

Besse McDonald and Julia J. Nierengarten, **MEAGHER & GEER PLLP**, 33 South Sixth Street, Suite 4300, Minneapolis, MN 55402, for Defendant Sheila Johnson.

Starsha Silva was 36 years old when she died from complications related to severe congenital heart disease while in the custody of the Federal Bureau of Prisons ("BOP"). Silva's daughter, Plaintiff Rylee Silva-Vidinha, brings this case against numerous Defendants including the United States, the BOP, and its employees, asserting claims under the Federal Tort Claims Act (FTCA), *Bivens*,[2] and Minnesota state law. She alleges that BOP officials failed to intervene despite knowing Silva needed emergency heart surgery, refused to allow an operation recommended by physicians at the Mayo Clinic, and cancelled necessary preoperative appointments. Silva-Vidinha alleges that this conduct is part of a pattern of inadequate health treatment at FCI Waseca.

---

[1] *See* Summons, Aug. 27, 2025, Docket No. 43 (providing the full name of Defendant Koziolek).

[2] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Bivens* recognized that an individual may seek damages against a federal officer in his or her individual capacity for violating the individual's constitutional rights while acting under federal authority.

This Court recently ruled on motions to dismiss brought by Defendants the United States and the BOP.  *See Silva-Vidinha v. United States*, Civ. No. 25-2137, 2026 WL 800675 (D. Minn. Mar. 23, 2026).  The Court now considers two further motions to dismiss brought by others alleged to have been involved with Silva's medical care: one by a group of Defendants[3] who will hereinafter be referred to as the "Individual Defendants," and one by Sheila Johnson.[4]

The Court will grant in part and deny in part both pending motions to dismiss.  First, the Court will grant in part and deny in part the Individual Defendants' Motion to Dismiss because the Court concludes that Silva-Vidinha has stated a plausible claim against only one Individual Defendant—Amanda Koziolek—as to Count II.  Accordingly, the Court will deny the motion as to Count II for Koziolek but dismiss all other counts against all other Individual Defendants.

Second, the Court will grant in part and deny in part Sheila Johnson's Motion to Dismiss.  The Court concludes that Silva-Vidinha has stated a plausible claim against Johnson as to Counts II, IV, and V, and the Court will, therefore, deny the motion as to those counts.  Because Silva-Vidinha has clarified that she did not intend to bring Counts I and III against Johnson, the Court will grant the motion to dismiss as to those counts.

---

[3] The group of defendants filing this motion are Michael Segal, Amanda Koziolek, Dr. Syed Fateh Hyder, Dr. Benjamin Rice, Dr. Linda Lindner, C. Mead, J. Peterson, Holly Sietsma, Tara Wieser, and Danielle Skogland.  (Mot. Dismiss, Dec. 19, 2025, Docket No. 60.)

## BACKGROUND

I.  **FACTS**

On May 24, 2023, Starsha Silva died of complications related to severe congenital heart disease while in the custody of the BOP at FCI Waseca.  (Complaint ("Compl.") ¶¶ 1, 36, 55, May 19, 2025, Docket No. 1.)  She was 36 years old.  (*Id.* ¶ 1.)  Silva "had a documented history of congenital heart disease, including a prior heart murmur and prior cardiac intervention."  (*Id.* ¶36.)  "In the months leading up to her death, she was regularly reporting symptoms including fatigue, shortness of breath, and chest pain."  (*Id.*)

On or around May 2, 2023, Ms. Silva was transported to Mayo Clinic, accompanied by Defendant Koziolek, Silva's case manager, "for a cardiac consultation."  (*Id.* ¶¶ 14, 37.)  Silva was "diagnosed with severe valvular heart disease," and "[t]he consulting physicians concluded that immediate surgical intervention was required and advised against returning Ms. Silva to prison without first performing the procedure."  (*Id.* ¶ 37)

Silva-Vidinha alleges "Koziolek refused to allow the operation to go forward because, upon information and belief, two officers were needed to guard her during the operation and no staff was available."[5]  (*Id.* ¶ 38.)  A doctor at the Mayo Clinic objected to Silva's departure, but "Koziolek forced Ms. Silva to return to FCI Waseca," telling the doctor "something to the effect of, 'You don't know who my boss is[.]'"  (*Id.* ¶ 39.)

---

[5] Silva-Vidinha alleges that Koziolek's role was as "Ms. Silva's case manager," and that she "was responsible for arranging and supervising [Silva's] off-site medical visits."  (Compl. ¶ 42.)

Silva-Vidinha alleges that Defendant Sheila Johnson, a nurse at FCI Waseca, was also "directly involved in Ms. Silva's medical care" and allegedly "cancelled preoperative appointments, despite knowing the severity of Ms. Silva's heart condition and the Mayo Clinic's urgent recommendation for surgery." (*Id*. ¶ 40.)  Silva-Vidinha filed a request for compassionate release with the Warden, Michael Segal, on May 2, 2023.  (*Id.* ¶ 34.)

Silva-Vidinha alleges that after the Mayo Clinic appointment on May 2, 2023, "Silva continued to experience serious and emergent symptoms . . . including fatigue, shortness of breath, and chest pain." (*Id*.  ¶ 46.)  However, Koziolek, who "knew that Ms. Silva needed immediate surgery," "did nothing to schedule the procedure" for three weeks. (*Id*. ¶ 43.)

On May 24, 2023, Silva was instructed to prepare for transfer.  (*Id*. ¶ 49.)  "On information and belief, [Silva] was going to be transferred to Federal Medical Center Carswell in Fort Worth[,] Texas" although BOP staff did not inform Silva of her destination. (*Id*.)

Silva was unsupervised as she gathered her belongings and "she collapsed in her cell," and was discovered "blue and unresponsive" by other incarcerated women in her unit.  (*Id*. ¶ 51–53.)  BOP staff "administered Narcan and attempted CPR."  (*Id*. ¶ 54.) However, "Silva had a known structural heart issue and a chest compromised by prior surgery.  CPR caused internal bleeding, and she died shortly thereafter." (*Id*.)  An autopsy

confirmed that Silva's cause of death was "complications of severe heart disease."  (*Id*.

¶ 55.)

## II.    PROCEDURAL HISTORY

Silva-Vidinha filed her Complaint on May 19, 2025.  (Docket No. 1.)  The Complaint

brings five counts:

- Count I alleges violations of the Federal Tort Claims Act for medical malpractice and wrongful death;
- Count II alleges violations of the Eighth Amendment for "Deliberate Indifference (Bivens)";
- Count III alleges "Supervisory and Policy Claims Against the United States";
- Count IV alleges medical malpractice claims under Minnesota state law; and
- Count V alleges wrongful death claims under Minnesota state law.

(Compl. ¶¶ 66–82.)

The Court recently ruled on a motion to dismiss in this case, brought by Defendants

the United States and the BOP.  *See Silva-Vidinha*, 2026 WL 800675.  The Court dismissed

all claims against the BOP but allowed Count I to proceed as alleged against the United

States.  *Id.* at *6.

The two pending motions to dismiss were both filed on December 19, 2025.  (*See*

Docket Nos. 60, 65.)  The first was brought by various Defendants[6] who refer to

themselves as the "Individual Defendants."  (Mot. Dismiss, Dec. 19, 2025, Docket No. 60.)

The Individual Defendants are primarily BOP medical staff who Silva-Vidinha alleges were

---

[6] These Defendants are Michael Segal, Amanda Koziolek, Dr. Syed Fateh Hyder, Dr. Benjamin Rice, Dr. Linda Lindner, C. Mead, J. Peterson, Holly Sietsma, Tara Wieser, and Danielle Skogland.  (Mem. Supp. Mot. Dismiss at 1, Dec. 19, 2025, Docket No. 63.)

in some way involved with Silva's inadequate medical care.  The second was brought by Defendant Sheila Johnson, alleged in the Complaint to be "a nurse at FCI Waseca."  (Mot. Dismiss, Dec. 19, 2025, Docket No. 65; Compl. ¶ 13.)

**DISCUSSION**

The Court will begin by setting forth the standards of review applicable to both motions.  The Court will then address the Individual Defendants' motion to dismiss and Johnson's motion to dismiss in turn.

**I.      STANDARD OF REVIEW**

**A.      12(b)(6) Motion to Dismiss**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor.  *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S.

265, 286 (1986).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.    Bivens Claims

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971), established that a victim of constitutional violations by a federal actor may recover damages against the actor in federal court even in the absence of a statutory cause of action.  The Supreme Court has formally recognized such an implied right of action for only three types of claims: under the Fourth Amendment for unreasonable search and seizure, under the Fifth Amendment for sex discrimination, and under the Eighth Amendment for deliberate indifference to a serious medical condition.  *See id.* at 389; *Davis v. Passman*, 442 U.S. 228, 244, 248–49 (1979); *Carlson v. Green*, 446 U.S. 14, 17–23 (1980).

The Supreme Court considers "expanding the *Bivens* remedy" beyond the three previously recognized causes of action to be "a 'disfavored' judicial activity."  *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Iqbal*, 556 U.S. at 674).  In deciding whether to extend Bivens to a new context, a court must consider whether the alleged cause of action is different in a meaningful way from a recognized Bivens action and, if so, whether there are "special factors counselling hesitation in the absence of affirmative action by Congress."  *Ziglar*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18).

## II.   INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

The Individual Defendants move to dismiss Count II for two reasons. First, the Individual Defendants argue that Silva-Vidinha failed to plead facts sufficient to support a *Bivens* claim. Second, Individual Defendants argue that even if there are sufficient facts alleged by Silva-Vidinha, the *Bivens* claim would require the Court to recognize a new *Bivens* cause of action.

### A.   Failure to State a Claim

For Silva-Vidinha to prevail on her *Bivens* claims under the Eighth Amendment, she must ultimately prove that the "defendants were deliberately indifferent to [her] serious medical needs . . . ." *Est. of Rosenberg ex rel. Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Silva-Vidinha "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Id.*

Of the Individual Defendants, Silva-Vidinha's Complaint contains specific allegations only against Koziolek and Segal. (*See, e.g.*, Compl. ¶¶ 33–35, 42–44.) Although the Complaint briefly introduces Defendants Hyder, Rice, Lindner, Taylor, Mead, Peterson, Sietsma, Weiser, and Skogland, it does not contain any specific allegations relating to any of these Defendants. (*Id.* ¶¶ 15–23.) Accordingly, the Court will dismiss Count II against those nine Defendants under Rule 12(b)(6).

Count II will also be dismissed against Segal. Silva-Vidinha's allegations against Segal, FCI Waseca's Warden, are more specific than for many of the other Defendants.

Silva-Vidinha alleges that "Segal was responsible for overseeing all medical and correctional staff at FCI Waseca," and that he "had actual knowledge of Ms. Silva's dire situation by May 2, 2023, when she filed a request for compassionate release." (Compl. ¶ 33–34.) Silva-Vidinha also alleges that "Segal failed to intervene when he learned Ms. Silva needed immediate heart surgery and failed to respond to Ms. Silva's compassionate release request." (*Id.* ¶ 35.)

But "there is no respondeat superior liability under *Bivens*"—"[d]efendants are liable for their personal acts only." *Rosenberg*, 56 F.3d at 37. Thus, "[t]he general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability." *Id.* While Silva-Vidinha's allegations pertaining to Segal's "fail[ure] to intervene" and "fail[ure] to respond to Silva's compassionate release request" (Compl. ¶ 35) lend specificity to her claim, they cannot support a claim for deliberate indifference. Accordingly, the Court will dismiss Count II as to Warden Segal.

However, the Court will deny the Individual Defendants' Motion to Dismiss as to Koziolek. Silva-Vidinha's allegations regarding Koziolek's conduct, which the Court must take as true at this stage, are specific and clear. Silva-Vidinha alleges that Koziolek forced Silva to return to FCI Waseca despite doctors at the Mayo Clinic stating that emergency surgery was necessary, and that for three weeks she failed to schedule the procedure despite her knowledge of Silva's condition and her need for the surgery. (*Id.* ¶ 39–44.)

The Court concludes that these allegations are sufficient to state a plausible claim for relief.

### B.   New *Bivens* Context

The Individual Defendants also argue that Silva-Vidinha's *Bivens* claims should be dismissed because they require the Court to recognize a new *Bivens* cause of action, which the Supreme Court has said is disfavored.  *See Ziglar*, 582 U.S. at 135.

At this stage, however, the Court is not convinced that Silva-Vidinha's claim requires the Court to recognize a new *Bivens* context.  The Supreme Court has long approved of "*Bivens* action[s] under the Eighth Amendment against federal prison officials for failure to provide medical treatment."  *See Ziglar*, 582 U.S. at 138 (citing *Carlson*, 446 U.S. at 16).  In *Carlson*, the Supreme Court recognized a cause of action for claims against medical staff at a federal prison when they failed to provide an inmate with "competent medical attention" after an asthma attack, including "delay[ing] for too long a time his transfer to an outside hospital."  446 U.S. at 16 n.1.  Although this case is not factually identical to *Carlson*, courts often look to the list of considerations set forth in *Ziglar* in determining "determining whether a case presents a new *Bivens* context."  *See Ziglar*, 582 U.S. at 139–140 (stating that courts should consider things such as "the rank of the officers involved," "the constitutional right at issue," and "the generality or specificity of the official action" in determining whether the case presents a new *Bivens*

context).[7]   The Court concludes—after considering the *Ziglar* factors—that that Silva-Vidinha's claim against Koziolek fits comfortably within the deliberate indifference cause of action that is well-established under *Bivens*.

For these reasons, the Court will deny the Individual Defendants' motion to dismiss Count II as to Defendant Koziolek but grant the motion as to all other Individual Defendants.[8]

## III.   SHEILA JOHNSON'S MOTION TO DISMISS

Defendant Sheila Johnson filed a motion to dismiss separate from that of the Individual Defendants.  She seeks dismissal of all claims brought against her.  Silva-Vidinha clarified in her opposition memorandum that she brings only Counts II, IV, and V against Johnson.

### A.   *Bivens* Claim

Johnson seeks dismissal of Silva-Vidinha's *Bivens* claim (Count II) on two grounds.  First, Johnson argues that she is not actually a federal employee and therefore cannot be

---

[7] The Eighth Circuit previously concluded that a plaintiff had presented a "classic case of deliberate indifference" where a prisoner "was unable to keep food down and would vomit when he tried to eat" but was "not scheduled to see an internal-medicine specialist for two months." *Crandell*, 56 F.3d at 37.

[8] The Individual Defendants also briefly raise the defense of qualified immunity in seeking dismissal of Silva-Vidinha's claims.  To defeat qualified immunity at the motion to dismiss stage, a plaintiff must allege "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (en banc).  The Court will deny the Individual Defendants' motion to dismiss on qualified immunity grounds at this stage.

sued under *Bivens* as a federal actor.[9] That very well may be the case. Regardless, at this stage of the litigation, the Court is bound to accept all facts alleged in the Complaint as true and in the light most favorable to the plaintiff. Silva-Vidinha's Complaint alleges that Johnson is a "nurse at FCI Waseca" who was involved in Silva's medical care. (Compl. ¶¶ 13, 40.) Accordingly, it would be premature to dismiss these claims based on the nature of Johnson's employment relationship with FCI Waseca based on facts asserted by Johnson which are outside the scope of the Complaint.

Second, Johnson contends that Silva-Vidinha does not allege facts sufficient to support an Eighth Amendment claim. However, the Court concludes that Silva-Vidinha's allegations, including that Johnson "cancelled preoperative appointments, despite knowing the severity of Ms. Silva's heart condition," are sufficient to state a plausible claim under *Bivens* at this stage. (*Id.* ¶ 40.) The Court will therefore deny Johnson's motion to dismiss as to Count II.

---

[9] Silva-Vidinha also relies on a decision from this District holding that a plaintiff could "assert his fifth and eighth amendment *Bivens* claims" against an employee determined to be an independent contractor, because the U.S. Supreme Court had held in the 42 U.S.C. § 1983 context that the state could be held liable when prisons contracted out medical care. *Bellecourt v. United States*, 784 F. Supp. 623, 628 (D. Minn. 1992) *aff'd in part, appeal dismissed in part*, 994 F.2d 427 (8ᵗʰ Cir. 1993) (citing *West v. Atkins*, 487 U.S. 42, 55–57 (1988). Because Johnson's allegations that she is not a federal employee are facts outside the scope of the Complaint, the Court will not opine on whether a plaintiff can assert *Bivens* claims against an independent contractor at this time.

-13-

### B.       Counts IV and V—Medical Malpractice and Wrongful Death

Johnson also seeks dismissal of Silva-Vidinha's state law claims of medical malpractice and wrongful death (Counts IV and V).

Johnson first argues that Silva-Vidinha has not been lawfully appointed as wrongful death trustee under Minnesota law, and therefore her state law wrongful death claim must be dismissed.  But the Court rejected the same argument in its previous Order on the United States's Motion to Dismiss, and does so again here.[10]  *See Silva-Vidinha*, 2026 WL 800675 at *6 ("While subsequent proceedings may bear out that the manner of Silva-Vidinha's appointment as administrator does not comport with Minnesota's wrongful death statute, the Court concludes that the facts alleged in the Complaint are sufficient to state a plausible claim to relief.").

Johnson also argues that Silva-Vidinha has failed to state a claim for either her medical malpractice or wrongful death claims under Minnesota law.  In Minnesota, "[t]he essential elements for medical malpractice claims are: (1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct, (2) that

---

[10] The Court also notes that on April 9, 2026, Silva-Vidinha filed a letter on the docket stating that a "Minnesota state court [has] formally appointed Plaintiff as trustee for Starsha Silva's estate" in the state of Minnesota. (Notice, Apr. 9, 2026, Docket No. 85.)  The question of whether a party must be appointed wrongful death trustee prior to the commencement of litigation appears to be a live question in Minnesota's appellate courts.  *See Hagfors ex rel. Hagfors v. Fairview Health Servs.*, No. A24-1539, 2025 WL 2389042 (Minn. App. Aug. 18, 2025), *review granted* (Oct. 29, 2025).

the defendant in fact departed from that standard, and (3) that the defendant's departure from the standard was a direct cause of [the patient's] injuries." *MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 717 (Minn. 2008) (internal quotation marks omitted). Johnson argues that Silva-Vidinha has failed to allege facts to support any of these elements, because Silva-Vidinha "focuses on an allegation she knows is false: Johnson is not and never was a nurse at FCI-Waseca." (Johnson's Reply Mem. at 13, Jan. 30, 2026, Docket No. 77.) Johnson goes on to state that "Counsel for Johnson informed Plaintiff's counsel at the meet and confer conference that Johnson was working at FCI-Waseca as a medical records clerk, not a nurse, at the time of decedent's death. . . . Plaintiff's argument remains premised on Johnson being a nurse, which she is not." (*Id.* at 13–14)

The Court emphasizes again that, at this stage, the Court must accept all facts alleged in the Complaint as true. Therefore, the Court will decline to dismiss Silva-Vidinha's claims against Johnson at this stage on the grounds that she was not an employee of FCI Waseca. The other facts alleged in Silva-Vidinha's Complaint are sufficient to state plausible claims for medical malpractice and wrongful death (Counts IV and V), and the Court will therefore deny Johnson's motion to dismiss to the extent it seeks to dismiss those claims.

## CONCLUSION

The Court will grant in part and deny in part both pending motions to dismiss. As to the motion brought by the Individual Defendants, the Court concludes that Silva-Vidinha has stated a plausible *Bivens* claim against Amanda Koziolek, for deliberate

indifference to a serious medical need but has not stated a plausible claim against any other Individual Defendant.  The Court will therefore deny the Individual Defendants' Motion to Dismiss Count II as to Koziolek and will grant the motion as to all other Individual Defendants.

The Court further concludes—taking all facts alleged in the Complaint as true, as the Court must at this stage—that Silva-Vidinha has stated a plausible *Bivens* claim (Count II) and plausible medical malpractice and wrongful death claims (Counts IV and V) against Sheila Johnson.  The Court will therefore grant Johnson's motion to dismiss as to Counts I and III, and deny the motion as to Counts II, IV, and V.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Michael Segal, Amanda Koziolek, Dr. Syed Fateh Hyder, Dr. Benjamin Rice, Dr. Linda Lindner, C. Mead, J. Peterson, Holly Sietsma, Tara Wieser, and Danielle Skogland's Motion to Dismiss (Docket No. [60]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. The motion is **DENIED** as to Amanda Koziolek;

   b. Count II is **DISMISSED without prejudice** as to Michael Segal, Dr. Syed Fateh Hyder, Dr. Benjamin Rice, Dr. Linda Lindner, C. Mead, J. Peterson, Holly Sietsma, Tara Wieser, and Danielle Skogland;

-17-

2. Sheila Johnson's Motion to Dismiss (Docket No. [65]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.  The motion is **DENIED** as to Counts II, IV and V;

    b.  Counts I and III are **DISMISSED without prejudice** against Sheila Johnson.

DATED:  August 6, 2026
at Minneapolis, Minnesota.

      /s/ John R. Tunheim
      JOHN R. TUNHEIM
      United States District Judge